IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KATHRYN A. BELFANCE, | ) CASE NO. 5:03 CV 1782 |
| | ) |
| Plaintiff, | ) JUDGE ANN ALDRICH |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) WILLIAM H. BAUGHMAN, JR. |
| NATIONAL ENGINEERING AND | ) |
| CONTRACTING COMPANY, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

## I.  Introduction

Before the Magistrate Judge for a Report and Recommendation is a motion for partial summary judgment filed by Kathryn Belfance, United States Bankruptcy Trustee for W.G. Lockhart Construction Company, Inc., ("Lockhart"),[1] on a claim originally brought by Lockhart against National Engineering & Contracting Company, Inc. ("National") in United States Bankruptcy Court seeking money allegedly due to Lockhart as a subcontractor on an Ohio highway project where National was the general contractor.[2]  That claim was subsequently withdrawn to this Court on National's motion.[3]  National has opposed the present motion for summary judgment[4] and the parties have presented their positions to the

---

[1] ECF # 14.

[2] *See*, ECF # 1, Ex. 1 at 2-3.

[3] ECF # 2.

[4] ECF # 16.

Magistrate Judge in oral argument.[5] For the reasons that follow, the Magistrate Judge recommends denying the motion.

## II.  Facts

There is no dispute that Lockhart contracted with National in 1995 to perform certain paving jobs in 1996-1998 on an Ohio Department of Transportation (ODOT) project to widen a stretch of Interstate 75 in Toledo, Ohio.[6] National was the prime contractor for this project.[7] Poor weather in 1996 and 1997 and extra work added to the project by ODOT to compensate for the weather both delayed final completion and created additional costs for Lockhart and National.[8]

By the terms of the subcontract, Lockhart was required to submit any claims for additional compensation to National which, in turn, would submit them to ODOT for payment.  Upon receipt of a payment from ODOT, National was to promptly pay Lockhart any money attributable to work done by Lockhart.[9]

---

[5] ECF # 23.

[6] ECF # 14, Ex. 5.  The exhibit numbers cited here are as they appears in the Court's ECF system and is not necessarily identical to the numbering system employed by the parties in their submissions.

[7] *Id.*

[8] *See*, ECF # 14, Ex. 2 at ¶ 6 (Affidavit of Richard Stanley); ECF # 16, Ex.2 at ¶¶ 5-7 (Affidavit of K. Leonard More).

[9] ECF # 14, Ex. 6 (Subcontract Agreement).

Prior to total completion of the project and anticipating that it would need to prepare a request for equitable adjustment (REA) seeking additional money for work not covered by change orders from ODOT, on February 2, 1999, National proposed an agreement to Lockhart whereby Lockhart would accept a *pro rata* share of any final settlement National received from ODOT as full payment for any work done by Lockhart.[10]

On February 10, 1999, Lockhart rejected that proposed agreement, specifically noting that Lockhart had previously submitted claims to ODOT for a total of $228,499.31 and would "accept whatever payment the State makes toward these issues."[11]  Further, Lockhart told National that as to Lockhart's claim for additional costs, it had, "per your instruction," "made the necessary changes and resubmitted this claim to your office.  Please attach your cover letter to our claim and forward it to the state for their processing."[12]  That same day, National did just that.[13]

On February 24, 1999, ODOT notified National that it was rejecting Lockhart's claim because it had no record that Lockhart had ever submitted the "proper notices and follow-up paperwork" and thus "since it appears that ODOT was never put on notice regarding

---

[10] ECF # 16, Ex. 3, Attachment 1 (Draft Agreement).

[11] *Id.,* Attachment 3 (Letter from Lockhart to National, February 10, 1999).

[12] *Id.*

[13] *Id.*, Attachment 2 (Letter from National to ODOT, February 10, 1999).

-3-

[Lockhart's claim], ODOT will not be issuing a change order for the submitted costs."[14] This response was faxed to Lockhart.[15]

On April 2, 1999, ODOT again rejected this claim by Lockhart in a letter to National.[16] While observing that National had attempted to cure the deficiencies in notice and paperwork that had been referred to by ODOT in its previous denial, ODOT again stated that Lockhart's claim still was not supported by the "submittal of estimated costs within ten calendar days of the date of submission of the Notice of Claim, along with keeping daily records" as required by the contract.[17] ODOT specifically noted that the failure to provide that cost estimate within ten days of submitting the notice of claim rendered the claim "abandoned and waived" by express terms of the contract.[18]

In December, 1999, upon the total completion of the project, National did submit an REA to ODOT.[19] The REA, which incorporated National's own request for additional compensation as well as those of its four subcontractors, including Lockhart, was prepared by National.[20] The total amount sought by the REA was $6,496,247.00 and included

---

[14] *Id.,* Attachment 6 (Letter from ODOT to National, February 24, 1999).

[15] *Id.*

[16] *Id.,* Attachment 7 (Letter from ODOT to National, April 2, 1999).

[17] *Id.*

[18] *Id.*

[19] ECF # 14, Ex. 2 at # 8 (National's Answers to Plaintiff's Requests for Admission).

[20] *Id.* at # 9; ECF # 14, Ex. 3 at §§ 4.5.4 and 4.5.5 (Request for Equitable Adjustment); and ECF # 16, Ex. 2 at ¶ 16 (Affidavit of More).

Lockhart's previously submitted claim for $692,077.16 that had been earlier twice rejected by ODOT.[21]  After it was submitted, the REA was supplemented by National in March, 2000 in the amount of $463,028.65 to include other unresolved claims by Lockhart for additional work,[22] resulting in total claims by Lockhart of $1,155,105.81.[23]

National and ODOT finally settled the REA claims for $3.2 million on August 22, 2000.[24]  National, claiming that no "portion of the $3.2 million compromise settlement with ODOT was paid in consideration for any subcontractor claims included in National Engineering's REA claim that relate to Lockhart's Subcontract for the Project or Lockhart's claim for extended general conditions in the amount of $692,077.16,"[25] offered to pay Lockhart $41,628.82 for various items it indicated were approved by the state.[26]  Lockhart, claiming it is owed a larger sum, declined payment of the lesser amount and the present action ensued.

In the its motion for partial summary judgment, Lockhart seeks the recovery of the $1,155,105.81 it contends represents its own claims for equitable adjustments submitted to

---

[21] ECF # 14, Ex. 3 at § 4.5.4.  National added a mark-up of five percent to the Lockhart claim for a total claim in this respect of $726, 681.

[22] ECF # 14, Ex. 2, Attachment 1 (National's Answers to Requests for Admission).

[23] *See,* ECF # 14, Ex. 1 at 6 (Brief in Support of Lockhart's Motion for Summary Judgment).

[24] ECF # 14, Ex. 2, Attachment 1.

[25] *Id.* at # 14.

[26] *Id.* at # 7.

-5-

the state and for which it has received nothing.[27] Lockhart argues initially that National breached its contract with Lockhart, which required payment to subcontractors within ten days of when the general contractor received a payment from ODOT, by not tendering prompt payment within ten days of the settlement of the REA.[28] Lockhart maintains that National, which submitted Lockhart's claims in the REA, should now be equitably estopped from arguing that those claims were found to be meritless by ODOT.[29]

Moreover, Lockhart asserts, National's failure to pay Lockhart any portion of the settlement with ODOT breached its fiduciary duty to Lockhart to act in good faith since National was, as contractor, "implicitly serv[ing] as Lockhart's agent when it submitted and, ultimately, settled" Lockhart's REA claims.[30] It further contends that Lockhart was an intended third-party beneficiary of the REA settlement and that National should not be permitted to be unjustly enriched by withholding from Lockhart any benefit from its work.[31] In addition, Lockhart seeks, under Ohio's Prompt Payment Act, that National be assessed eighteen percent annual interest on any judgment plus attorneys fees.[32]

---

[27] ECF # 14, Ex. 1 at 7.

[28] *Id*. at 9.

[29] *Id.*

[30] *Id.* at 10-11.

[31] *Id*. at 11.

[32] *Id*. at 12.

National, in turn, argues that there is no breach of contract here and no equitable estoppel because there is no agreement between these parties for a pro rata distribution of the settlement proceeds and because National simply passed Lockhart's claims through to ODOT and cannot be responsible for ODOT's ultimate disposition of those claims.[33]  Moreover, National contends that the theories of third party beneficiary, breach of fiduciary duty and unjust enrichment, as well as the arguments based on the Ohio Prompt Payment Act, fail here as matters of law.[34]

### III.  Analysis

The summary judgment stand is well-known.  Federal Rule of Civil Procedure 56(c) provides that a party may be awarded summary judgment when a court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

A fact is material only if its resolution will affect the outcome of the lawsuit.[35] Whether a fact is genuinely at issue requires the application of relevant evidentiary standards.[36]  Courts must consider any relevant evidence "in the light most favorable to the party opposing the motion."[37]

---

[33] ECF # 16 at 18-22.

[34] *Id.* at 22-26.

[35] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[36] *Id.* at 252.

[37] *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Summary judgment cannot be granted if the moving party bears the burden of proof at trial and cannot establish the essential elements of his case.[38]  The non-moving party may not simply rely on the pleadings, but must, when presented with facts supporting the moving party's position, "produce evidence that results in a conflict of material facts to be solved by the jury."[39]

Courts are not to consider non-material facts nor weigh the evidence to arrive at conclusions as to the truth of the matter.[40]

Here, Lockhart's claim rests on the assertion that National is obligated under the various stated theories to pay Lockhart for its claims presented to ODOT in the REA and for which, assertedly, National received funds from ODOT as part of the undifferentiated settlement.  National has argued that it received no funds as part of the settlement from ODOT that are attributable to Lockhart's REA claims.

First, it must be noted that there is no dispute that the settlement with ODOT was an undifferentiated settlement in that it did not distinguish between which individual elements of the claim were considered meritorious and which were not.  In this context, Lockhart has offered no evidence to support a finding that the ODOT settlement necessarily included any money for its claims.  The fact that the settlement was for considerably less than the total amount requested by the REA, however, necessarily supports a finding that not all claims

---

[38] *See*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[39] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[40] *Anderson*, 477 U.S. at 248.

were fully paid.  Further, National has presented the affidavit of K. Leonard More, the contract administrator, testifying that ODOT "assigned a monetary value of zero" to Lockhart's claims when arriving at the settlement.[41]

The absence of any evidence here as to which claims were paid and which were not, and specifically whether any or all of Lockhart's claims were paid or rejected, as well as the absence of any agreement between these parties as to how they would handle the precise circumstances presented here, leaves a fatal hole in Lockhart's case for purposes of granting it summary judgment.

That is, unless Lockhart can establish that National actually received payment from ODOT for the full value of Lockhart's claims, there is no foundational basis for a court considering a motion for summary judgment to determine the correct legal theory by which Lockhart may force National to remit anything.

Similarly, summary judgment in favor of Lockhart for a *pro rata* share of the ODOT settlement is not possible because, in the first instance, it was specifically not requested by Lockhart,[42] and further because Lockhart's rejection of the *pro rata* approach proposed by

---

[41] ECF # 16, Ex. 2 at ¶ 18.  While Lockhart strenuously argues that this statement by More is hearsay and should not be considered in a motion for summary judgment (*see*, ECF # 18 at 2), the Magistrate Judge observes that National is not the moving party here with the obligation to establish the requisite elements of the motion.  Whatever the deficiencies in More's affidavit, were it to be presented as the basis for a summary judgment, his assertion highlights the fact that Lockhart has presented no evidence to establish the essential point for its motion that National **was** paid by ODOT for the full value of Lockhart's claims.  Indeed, Lockhart itself notes at ECF # 18 at 2, fn.2 that "[i]t would be a fair assumption that ODOT, on some level, took exception with (sic) all of the equitable adjustment claims."

[42] *See*, ECF # 14, Ex. 1 (Lockhart's Brief in Support of Motion for Partial Summary Judgment) at 2: "Lockhart has filed this motion for partial summary judgment which raises

National prior to the submission of the REA at the very least creates an issue for the jury as to whether the parties here intended, even after that rejection, to employ a *pro rata* formula for making disbursements from an undifferentiated settlement.

### IV. Conclusion and Recommendation

Accordingly, the Magistrate Judge recommends denying Lockhart's motion for partial summary judgment.

Dated:   June 28, 2006                           s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

### Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[43]

---

two issues: 1. At the conclusion of the three-year project, National submitted to ODOT a $6.9 million Request for Equitable Adjustment to cover certain costs associated with ODOT's failure to grant sufficient time extensions for adverse weather.  These requests included Lockhart's own claims for equitable adjustment totaling $1,155,105.81. ODOT and National settled the matter, with ODOT paying National $3.2 million for 'complete satisfaction and waiver of all claims by National and its subcontractors.'  Is Lockhart entitled to receive $1,155,105.81?"

[43] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-10-